IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HENRY LEE HUNTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0788-D |
| | § | |
| NAVY FEDERAL CREDIT UNION, | § | |
| MARY MCDUFFIE, and JOHN | § | |
| COLLINS, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

*Pro se* plaintiff Henry Lee Hunter ("Hunter") sues defendants Navy Federal Credit Union ("NFCU"), Mary McDuffie ("McDuffie"), and John Collins ("Collins") for securities fraud and breach of contract. Defendants move to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the Rule 12(b)(2) motion as to McDuffie and Collins, and grants in part and denies in part the Rule 12(b)(6) motion as it relates to Hunter's claims against NFCU. The court also grants Hunter leave to replead his claims against NFCU.

I

Hunter alleges that he is a Beneficial Owner and Authorized Agent of several bank accounts held at NFCU, where McDuffie serves as Chief Executive Officer and Collins serves as Chief Financial Officer. According to his complaint, defendants "induced [him]

into multiple account agreements (securities deposit, insurance, checking, savings and credit card agreements) without full disclosure of his rights." Compl. at 1. He also alleges that defendants have "misidentifi[ed] him." *Id.*

According to the complaint, on four separate occasions in 2022 and 2023, defendants presented Hunter with offers "for the proceeds from the security interest due to" two NFCU accounts in his name. Compl. ¶¶ 1.1.1, 2.2.1, 2.2.4, 2.2.7. Hunter alleges that he accepted these offers, "assigned all titles, rights and interest to the proceeds" to defendants, and sent defendants "financial assets" "with instructions to tender for payment in full for" set-off of the accounts. Compl. ¶¶ 1.1.2, 2.2.2, 2.2.5, 2.2.8. He also alleges that he sent defendants a letter indicating his intent to "correct his status in the internal records at [NFCU] to reflect his true identity as the Beneficial Owner and Authorized Agent" of these accounts. Compl. ¶ 1.1.2.

Hunter alleges that, after he sent these financial assets to defendants, defendants "did not perform, did not provide an opportunity to cure, refused to apply the value of the financial assets to the principal account balances for set-off, converted any property[,] and did not update the records at [NFCU] to reflect [his] true identity" as the owner of the accounts. Compl. ¶¶ 1.1.3, 2.2.3, 2.2.6, 2.2.9. In the face of these alleged actions by defendants, Hunter asserts that, on September 5, 2023, he sent defendants a Notice of Non-Response, stating that he "was providing [defendants with] a formal opportunity to cure" and ordering them to respond within ten days. Compl. ¶ 1.1.4. When defendants did not respond, Hunter sent them a Certificate of Protest on September 15, 2023. He then sent

defendants a Notice of Intent in January 2024, which stated his intention:

> • To verify [his] true identity as the Owner, Agent and Entitlement Holder of ALL accounts held in the principal name, HENRY LEE HUNTER, or any derivative thereof, by [NFCU] (accounts ending in 8345, 5551, 9616, and 9123).
> • To claim all titles, rights and interests due to, or being withheld for, the principal account in the name, HENRY LEE HUNTER, or any derivative thereof.
> • To assent to all terms and agreements held in the principal name, HENRY LEE HUNTER, or any derivative thereof.
> • To assign to [NFCU], all titles, rights and interest under the credit card agreements held in the principal name of HENRY LEE HUNTER, or any derivative thereof, accounts ending in 9616 and 9123, for set-off of their daily balance.

Compl. ¶ 1.1.7. In March 2024 Hunter sent defendants a Notice of Rescission of Security Interest and Arbitration Clause, asking them to inform him of "the steps that would be taken to rectify this matter." Compl. ¶ 1.1.8. Hunter alleges that, as of April 2, 2024, defendants have not responded to these communications, have not credited his accounts with the interest due on them, and have not updated their internal records to reflect his ownership of the accounts.

Hunter brings this action against NFCU, McDuffie, and Collins, asserting causes of action for securities fraud and breach of contract and requesting injunctive relief and compensatory and punitive damages. Defendants move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim on which

relief can be granted.¹  The court is deciding the motion on the briefs, without oral argument.

II

The court turns first to defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  Defendants contend that Hunter's complaint does not establish this court's personal jurisdiction over McDuffie or Collins.²

A

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite.  The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant.  If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution.  *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over McDuffie and Collins would be consistent with the Due Process Clause of the Fourteenth Amendment.  *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself [or herself] of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state;

---

¹Defendants also initially moved to dismiss under Rule 12(b)(4) and (5) for insufficient service of process.  But they explicitly relinquished this argument in their reply brief.  The court therefore does not address this issue.

²Defendants do not contest the court's personal jurisdiction over NFCU.

> and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he [or she] "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The defendant's contacts with the forum state may support either specific or general jurisdiction over the defendant. *See Mink*, 190 F.3d at 336. "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Id.* (citation omitted). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (citation omitted).

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines: (1) the defendants' burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (citation omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

B

Hunter has failed to make a *prima facie* showing of this court's personal jurisdiction over either McDuffie or Collins.

In his complaint, Hunter alleges that, "despite [the fact] that the Defendants' corporate offices are in Fairfax County, Virginia, they are registered and conducting business in Texas that has directly impacted the Plaintiff's interests[.]" Compl. 2. And in his response brief, Hunter contends that personal jurisdiction "is unequivocally supported by the Defendants' significant engagement in transactions within Texas, which directly affected the Plaintiff's financial stability and contractual dealings," and that defendants' "activities link directly to the claims of securities fraud and breach of contract raised by the Plaintiff." P. Br. (ECF No. 7) at 4.

These are conclusory allegations that defendants dispute and that the court is not required to credit. Hunter has alleged no specific facts indicating that McDuffie and Collins *individually* are significantly engaged in transactions within Texas that are directly linked to the claims in this action. Rather, the complaint improperly combines its personal jurisdiction allegations as to McDuffie and Collins with its personal jurisdiction allegations related to NFCU.

The court grants defendants' motion under Rule 12(b)(2) and dismisses this action without prejudice as to defendants McDuffie and Collins by Rule 54(b) final judgment filed today.

### III

The court turns next to defendants' motion under Rule 12(b)(6) to dismiss for failure to state a claim on which relief can be granted. Because the court has dismissed McDuffie and Collins from this action, it focuses on whether Hunter has pleaded plausible claims against only NFCU.

### A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

The court first addresses Hunter's securities fraud claim. Hunter purports to bring this claim under two statutes: (1) § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5"), 17 C.F.R. § 240.10b-5, promulgated thereunder; and (2) the Bank Secrecy Act of 1970 ("BSA"), 31 U.S.C. § 5311 *et seq.*, and 31 C.F.R. § 1020.220, promulgated thereunder. The court considers in turn whether he has stated a claim under each of these statutes.

1

> The elements of a private securities fraud claim based on violations of 15 U.S.C. § 78j(b) and [Rule 10b-5] are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.

*Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Erica P. John Fund, Inc v. Halliburton Co.*, 563 U.S. 804, 810 (2011)). Because Hunter brings a private lawsuit for securities fraud under the Exchange Act and Rule 10b-5, he must comply with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and "conform the allegations in [his] complaint to the heightened pleading requirements set forth at 15 U.S.C. § 78u-4." *Spitzberg*, 758 F.3d at 679.

> [T]he PSLRA heightened the pleading standards for private claims of securities fraud "in two ways." That is, plaintiffs must also, first, allege with particularity why each one of defendants' representations or omissions was "misleading" under 15 U.S.C. § 78u-4(b)(1) and, second, allege with particularity those facts giving rise to a "strong inference" that the defendant acted with the required state of mind under 15 U.S.C. § 78u-4(b)(2).

*Id.* at 683 (citing *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 532-33 (5th Cir. 2008)). To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

The first element of this claim "obligates plaintiffs to plead with particularity what each of defendants' misrepresentations or omissions was and why each was misleading." *Shen v. Exela Techs., Inc.*, 2022 WL 198402, at *3 (N.D. Tex. Jan. 21, 2022) (Fitzwater, J.). "To satisfy the second requirement—scienter—plaintiffs must allege with particularity the facts giving rise to a strong inference that defendants acted with the required state of mind." *Id.* "In this circuit, the required state of mind for scienter is an intent to deceive, manipulate, or defraud or severe recklessness." *Spitzberg*, 758 F.3d at 684 (internal quotation marks and brackets omitted, footnote omitted).

Hunter has failed to plead a plausible claim under 15 U.S.C. § 78j(b) and Rule 10b-5. Although he alleges that NFCU "induced [him] into multiple account agreements . . . without full disclosure of his rights" and "misrepresent[ed] . . . the agreements," he does not plead with particularity what those misrepresentations were or why they were misleading. Compl. at 1. Furthermore, he alleges no facts indicating that NFCU acted with scienter, that he relied on NFCU's alleged misrepresentations, or that the alleged misrepresentations were causally connected to the purchase or sale of a security. Contrary to his assertion in his response brief, Hunter's complaint does not "specif[y] the fraudulent statements made by Defendants, identif[y] the roles of specific Defendants in these misstatements, [or] delineate[] the resultant damages to [him]." P. Br. (ECF No. 7) at 5.

The court therefore dismisses Hunter's securities fraud claim against NFCU to the extent he asserts it under the Exchange Act.

2

There is no private right of action under the Bank Secrecy Act. *See, e.g.*, *META Sols. v. First State Bank of Brownsboro*, 2020 WL 12991132, at *6 (E.D. Tex. Apr. 16, 2020); *3T Oil & Gas Servs., LLC v. JPMorgan Chase Bank, N.A.*, 2018 WL 5018483, at *4 (W.D. Tex. Oct. 16, 2018); *Marlin v. Moody Nat'l Bank, N.A.*, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006). "The obligation under th[is] statute is to the government," meaning that banks owe private individuals no duty of care pursuant to it. *Marlin*, 2006 WL 2382325, at *7.

Accordingly, the court dismisses Hunter's securities fraud claim against NFCU to the extent he asserts it under the Bank Secrecy Act.

C

The court next addresses Hunter's breach of contract claim.[3]

"The elements of a breach of contract action under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d

---

[3]In the introduction to his complaint, Hunter alleges that defendants have "breached the contract and violated federal law - Uniform Commercial Code ("UCC") Article 4A, Section 4A-302, Section 4A-401 and Section 4A-402." Compl. at 2. Texas's version of the UCC is Tex. Bus. & Com. Code Ann. § 1.101 *et seq.* Because in the remainder of the complaint Hunter alleges a cause of action only for "breach of contract," not for violations of this statute, the court assumes that Hunter is asserting only a common-law breach of contract claim, not a statutory claim under the Texas Business and Commerce Code. If, however, Hunter elects to amend his complaint as permitted under the court's grant of leave to replead, *see infra* at § V, he may assert an additional claim under this statute, assuming he has a basis to do so.

167, 170 (5th Cir. 2018) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

As to the first element of the claim, Hunter alleges that he "entered into a legally binding and enforceable agreement with Defendant(s) by accepting their offers to the proceeds due to [him] from the security interest owed to" his NFCU accounts "for value and consideration." Compl. at 2, ¶¶ 2.2.2, 2.2.5, 2.2.8. As to the second element, he alleges that he "delivered . . . a financial asset [to defendants] with instructions to tender for payment in full for the principal account balance." Compl. ¶¶ 2.2.2, 2.2.5, 2.2.8. He then asserts that defendants breached the contract when they "did not perform nor provide an opportunity to cure and refused to apply the value of the financial asset to the principal account balances for set-off." Compl. ¶¶ 2.2.3, 2.2.6, 2.2.9. Finally, he alleges that defendants' actions breaching the contract "caused injury and damages to him and his family, financially and emotionally, drastically restricted his access to his right to credit and limited his ability to engage in commerce for over 14 months." Compl. ¶ 2.2.10.

Although these allegations are only borderline adequate, the court holds that, taken as true and liberally construed,[4] they are sufficient to enable the court to draw the reasonable inference that NFCU breached a contract with Hunter. At the motion to dismiss stage,

---

[4]The court must liberally construe the allegations in a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"); *see also Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

Hunter is not obligated to provide proof that substantiates these allegations, such as by attaching any agreement between the parties; he need only plead enough facts to state a claim to relief that is plausible on its face.

The court therefore denies defendants' motion under Rule 12(b)(6) as to the breach of contract claim.

### D

The court now addresses Hunter's assertion in his response brief that his claims are "buttressed by . . . the doctrine of estoppel by acquiescence." P. Br. (ECF No. 7) at 5.

"[N]o affirmative claim for . . . estoppel by acquiescence exists in Texas." *Cotton v. Tex. Express Pipeline, LLC*, 2017 WL 3709093, at *5 (W.D. Tex. July 19, 2017). Because estoppel by acquiescence "is defensive in nature, it is raised by a defendant as an affirmative defense, or by a plaintiff as a counter-defense to nullify an affirmative defense." *Jay v. Specialized Loan Servicing, LLC*, 2021 WL 3738004, at *8 (E.D. Tex. Aug. 23, 2021) (citations omitted). The doctrine cannot be employed as additional support for the allegations in a plaintiff's complaint when opposing a motion to dismiss.

The court therefore accords no weight to Hunter's references to estoppel by acquiescence, considering that he asserts the doctrine to buttress the allegations in his complaint that are needed to oppose defendants' Rule 12(b)(6) motion.

### E

In sum, the court grants defendants' motion to dismiss under Rule 12(b)(6) as to Hunter's securities fraud claim against NFCU, but denies the motion as to his breach of

contract claim.

IV

Although the court is granting defendants' motion to dismiss defendants McDuffie and Collins from the case under Rule 12(b)(2) and to dismiss Hunter's securities fraud claim under Rule 12(b)(6), it will allow Hunter to file an amended complaint.

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration omitted) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It is not apparent that the pleading deficiencies in Hunter's complaint are incurable, and Hunter has not advised the court that he is unwilling or unable to amend in a manner that will avoid dismissal.

Moreover, in granting leave to replead, the court takes into consideration that Hunter is proceeding *pro se*.  *See, e.g.*, *Smallwood v. Bank of Am.*, 2012 WL 32654, at *5 (N.D. Tex. Jan. 6, 2012) (Fitzwater, C.J.) (granting leave to file third amended complaint because plaintiffs were appearing *pro se*).

\* \* \*

For the reasons explained, the court grants defendants' motion in part and denies it in part. The court dismisses Hunter's action against McDuffie and Collins without prejudice under Rule 12(b)(2) by Rule 54(b) final judgment entered today, and grants in part and denies in part under Rule 12(b)(6) Hunter's action against NFCU. The court grants Hunter leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed that alleges claims against NFCU.

**SO ORDERED**.

June 20, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE