IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HENRY LEE HUNTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0788-D |
| | § | |
| NAVY FEDERAL CREDIT UNION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

*Pro se* plaintiff Henry Lee Hunter ("Hunter") sues defendant Navy Federal Credit Union ("NFCU") for breach of contract, promissory estoppel, and consumer fraud. Hunter also asserts claims under various Texas and federal laws. NFCU moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion and also grants Hunter leave to replead his common-law breach of contract claim.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order and need not be repeated at length for purposes of deciding NFCU's motion to dismiss.[1]

Hunter's original complaint asserted claims against NFCU, Mary McDuffie

---

[1] *Hunter v. Navy Fed. Credit Union (Hunter I)*, 2024 WL 3094610, at *1-2 (N.D. Tex. June 20, 2024) (Fitzwater, J.).

("McDuffie"), and John Collins ("Collins").  The court granted defendants' motion to dismiss Hunter's claims against McDuffie and Collins for lack of personal jurisdiction, and dismissed for failure to state a claim all of Hunter's claims against NFCU except for his common-law breach of contract claim.  The court also granted Hunter leave to replead his claims against NFCU.  Hunter then filed a first amended complaint asserting claims against NFCU for breach of contract, promissory estoppel, and consumer fraud, and claims arising under various Texas and federal statutes and regulations.  Hunter failed, however, to replead his common-law breach of contract claim.  The first amended complaint is Hunter's operative pleading.

Because Hunter's first amended complaint pleads new claims, it includes a few factual allegations that were not included in his original complaint:[2] according to the first amended complaint, Hunter's various agreements with NFCU "constitute contracts involving negotiable instruments under Texas Business and Commerce Code § 3.104," Am. Compl. § IV, ¶ 1.1; NFCU's failure to honor the terms of these agreements "constitute[s] a breach under §§ 3.301 and 3.302," *id.* § IV, ¶ 1.3; he reasonably relied to his detriment on NFCU's promises to apply proceeds from a security interest to his NFCU account ending in 9616; NFCU engaged in deceptive practices in violation of the Texas Deceptive Trade

---

[2]The court recounts the background facts favorably to Hunter as the nonmovant.  In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

Practices-Consumer Protection Act ("DTPA") by "failing to disclose material terms of the account agreements," *id.* § IV, ¶ 3.1, and by "misrepresent[ing] the terms and conditions, amounting to fraudulent inducement," *id.* § IV, ¶ 3.2; and NFCU violated various other Texas and federal laws.

Hunter asserts causes of action against NFCU for breach of contract under Chapter 3 of the Texas Business and Commerce Code ("Chapter 3"), promissory estoppel, and consumer fraud under the DTPA, and asserts violations of various other Texas and federal statutes and regulations. NFCU moves to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The court is deciding the motion on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

- 3 -

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court first addresses Hunter's breach of contract claim, which he brings under Chapter 3.

A

"The elements of a breach of contract action under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

To plead a breach of contract claim under Chapter 3, a plaintiff must also allege that the contract involved a negotiable instrument.   *See Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 660 (Tex. App. 2017, pet. denied) (quoting Tex. Bus. & Com.

- 4 -

Code Ann. § 3.102 (West 2002)) ("Chapter 3 of the Business and Commerce Code only 'applies to negotiable instruments.'"); *see also MacFadden v. GMAC Mortg., LLC*, 2013 WL 2422579, at *5 (S.D. Tex. June 3, 2013) (dismissing breach of contract claim where plaintiff did not adequately plead that contract involved a negotiable instrument). "The negotiability of an instrument is a question of law." *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 248 (Tex. App. 2011, no pet.) (citing *FFP Mktg. Co. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 407 (Tex. App. 2005, no pet.). Chapter 3 defines a negotiable instrument as:

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain: (A) an undertaking or power to give, maintain, or protect collateral to secure payment; (B) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or (C) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Tex. Bus. & Com. Code Ann. § 3.104 (West 2024).

## B

As grounds for his breach of contract claim, Hunter alleges the following: various of his agreements with NFCU "constitute contracts involving negotiable instruments," Am. Compl. § IV, ¶ 1.1; he is a person entitled to enforce the instruments under § 3.301 and a holder in due course under § 3.302; he performed under the contracts by "accepting the offers and assigning all rights to the proceeds to NFCU," *id.* § IV, ¶ 1.2; NFCU breached the

contracts by failing to honor their terms; and NFCU's breach caused him financial losses and emotional distress.

NFCU contends that Hunter has failed to plead a plausible breach of contract claim under Chapter 3 because "[a]s pled, negotiable instruments are not at issue." D. Br. (ECF No. 20) at 4. NFCU maintains that Hunter's legal conclusion that the documents he identifies are negotiable instruments under Chapter 3 is not entitled to the assumption of truth, and that Hunter otherwise fails to plead factual allegations that would allow the court to reasonably infer that the documents qualify as negotiable instruments.

Hunter responds that the factual allegations in his amended complaint adequately allege that his agreements with NFCU involved negotiable instruments within the meaning of Chapter 3. He also asserts that "[e]ven if the instruments were not considered negotiable, NFCU's failure to perform as agreed still constitutes a breach of contract." P. Resp. (ECF No. 21) at 4.

C

Hunter has failed to allege facts that enable the court to draw the reasonable inference that NFCU breached any contract that is governed by Chapter 3.

Instead of supporting his contention that Chapter 3 governs his contracts with NFCU with well-pleaded facts, Hunter alleges only the legal conclusion that his agreements with NFCU "constitute contracts involving negotiable instruments." Am. Compl. § IV, ¶ 1.1; *see Guniganti*, 346 S.W.3d at 248 (citing *FFP Mktg.*, 169 S.W.3d at 407) ("The negotiability of an instrument is a question of law."). Although the court "accept[s] all well-pleaded facts

as true," it does not "accept as true [Hunter's] conclusory allegations . . . or [his] legal conclusions." *King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022) (citations omitted). Hunter's bare legal conclusion that his contracts with NFCU involved negotiable instruments cannot satisfy his burden of plausibly alleging facts from which the court can reasonably draw that inference. *See, e.g.*, *Richards v. JRK Prop. Holdings*, 405 Fed. Appx. 829, 831 (5th Cir. 2010) (per curiam) (affirming dismissal of Title VII discrimination and retaliation claims that were not plausible on their face and concluding that plaintiff's "assertion of racial discrimination is a legal conclusion that the court is not required to accept and does not suffice to prevent a motion to dismiss"); *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, 2020 WL 5946863, at *1 (N.D. Tex. Oct. 7, 2020) (Fitzwater, J.) (explaining that the allegations of plaintiff's amended petition "are factually conclusory and/or legal conclusions and are therefore inadequate to plead a plausible claim for breach of contract); *Thompson v. DS Water*, 2014 WL 4815659, at *4 (N.D. Tex. Sept. 29, 2014) (Solis, J.) (quoting *Iqbal*, 556 U.S. at 678) ("[W]hile the complaint makes the legal conclusion that Defendant retaliated and discriminated against Plaintiff because of her race, the factual allegations fail to support this conclusion and instead appear to be nothing more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" (second alteration in original)).

Nor does Hunter's exhibit list nudge his claim "across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. Hunter alleges that his contention that his contracts with NFCU involved negotiable instruments is supported by various exhibits: eight "Negotiable Instrument[s]," two "Conditional Acceptance Letter[s]," two "Remittance

Letter[s]," two "Letter[s] to Creditor," one "Navy Federal Credit Card Agreement," and one "Navy Federal Credit Union Membership Agreement." Am. Compl. § IV, ¶ 1.1. Hunter lists these documents in an exhibit list attached to his first amended complaint, but he does not attach the corresponding exhibits. A "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citing Rule 10(c)). But Hunter's bare legal conclusions—here, that the exhibits enumerated in his exhibit list constitute negotiable instruments—cannot meet his burden of plausibly alleging that his contracts with NFCU involved negotiable instruments. *See, e.g.*, *Richards*, 405 Fed. Appx. at 831 (concluding that legal conclusions do not suffice to satisfy Rule 12(b)(6)); *Vandelay*, 2020 WL 5946863, at *1 (same); *Thompson*, 2014 WL 4815659, at *4 (same).

The absence from Hunter's pleadings of the exhibits or pleaded facts concerning their contents is practically fatal to his Chapter 3 claim at the Rule 12(b)(6) dismissal stage. Although the "negotiability of an instrument is a question of law," *Guniganti*, 346 S.W.3d at 248, determining whether something qualifies as a negotiable instrument within the meaning of Chapter 3 is a fact-intensive inquiry that traditionally requires a court to consider its contents. *See, e.g.*, *Ellis-Erkkila v. Citibank*, 2023 WL 3190843, at *2-3 (W.D. Tex. May 1, 2023) (concluding that deposit agreement was not a negotiable instrument because it "merely governs the relationship between the bank and the account owners," "does not promise to pay a fixed amount of money[,]" and "does not create an unconditional promise to pay a fixed amount"), *rec. adopted*, 2023 WL 5519669 (W.D. Tex. Aug. 24, 2023);

*Amplify Fed. Credit Union v. Garcia*, 2017 WL 6757001, at *3 (Tex. App. Dec. 19, 2017, no pet.) (mem. op.) (citations omitted) ("Because the sales contract is not payable to bearer or payable to order, it lacks an essential element to make it a negotiable instrument."); *MacFadden*, 2013 WL 2422579 at *5 (concluding that check was not a negotiable instrument because it "was conditional and was not payable at the time issued and it bore an instruction that it was not for deposit"); *Leavings v. Mills*, 175 S.W.3d 301, 311 (Tex. App. 2004, no pet.) (citations omitted) ("The note consisting of the Leavings' retail installment contract and completion certificate is not a negotiable instrument, however, since it is not made payable either 'to bearer' or 'to order' and, therefore, lacks an essential element of a negotiable instrument."); *Tex. State Invs., Inc. v. Kent Elec. Co.*, 620 S.W.2d 841, 843 (Tex. Civ. App. 1981, no writ) ("The contract clause in question is not a negotiable instrument because the promise to pay is (1) not unconditional, (2) not payable on demand or at a definite time, and (3) not to pay to order or to bearer.").  But without facts, no fact-intensive inquiry can be conducted.  Because Hunter has neither attached to his first amended complaint the exhibits on which he relies, nor alleged facts about their contents, the court is unable to evaluate these contents of the exhibits to determine whether they satisfy Chapter 3's definition of negotiable instrument.

Thus because Hunter has failed to plead facts that enable the court to reasonably infer that his alleged contracts with NFCU involved negotiable instruments, he has failed to plausibly allege a breach of contract claim under Chapter 3.  Accordingly, NFCU is entitled to dismissal of this claim.

D

Although the court is dismissing Hunter's Chapter 3 breach of contract claim and Hunter has not explicitly moved for leave to amend his first amended complaint, the court will grant Hunter leave to replead his common-law breach of contract claim.

"While a 'court should freely give leave [to amend] when justice so requires,' a party must first ask the district court for leave to amend." *White v. Romspen Mortg. Ltd. P'ship*, 2022 WL 110242, at *2 (W.D. Tex. Jan. 12, 2022) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)), *rec. adopted*, 2022 WL 17812844 (W.D. Tex. Feb. 22, 2022); *see also Law v. Ocwen Loan Servicing, L.L.C.*, 587 Fed. Appx 790, 796 (5th Cir. 2014) (per curiam) (citation omitted) ("[A] party must 'expressly request' leave to amend."). Nevertheless,

> the requirements of the rules of procedure should be liberally construed and [] "mere technicalities" should not stand in the way of consideration of a case on its merits. Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.

*Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (citations omitted); *see also United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996) (per curiam) (citation omitted) ("To penalize [a *pro se* litigant] for less-than-perfect pleading is a clear violation of the rule that courts must liberally construe pro se pleadings."); *Potts v. Estelle*, 529 F.2d 450, 452 (5th Cir. 1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam)) ("The standard against which we measure pro se complaints and petitions is and should be loose

enough to accommodate the inartful pleader.").

Although Hunter has not explicitly asked the court for leave to amend, he has taken an action that is the functional equivalent: In his brief in opposition to NFCU's motion to dismiss, Hunter asserts that "[e]ven if the instruments were not considered negotiable, NFCU's failure to perform as agreed still constitutes a breach of contract."  P. Resp. (ECF No. 21) at 4.  Hunter asserts that, notwithstanding the possible non-negotiability of the instruments involved in his alleged contracts with NFCU, NFCU's breach of contract remains actionable, which means that his common-law breach of contract claim from his original complaint remains viable if his Chapter 3 claim fails.  Thus, irrespective of its form, this argument's function is to suggest that, if the court disagrees with Hunter's contention that he has pleaded a plausible Chapter 3 breach of contract claim, he could yet prevail if granted leave to amend his complaint to replead his common-law breach of contract claim. Accordingly, the court in its discretion liberally construes Hunter's assertion as a request for leave to amend his first amended complaint to replead his common-law breach of contract claim.[3]  *See Potts*, 529 F.2d at 452 (concluding that *pro se* litigant's reliance on right-to-

---

[3]Hunter omitted from his first amended complaint his common-law breach of contract claim, which survived NFCU's first motion to dismiss.  Context and common sense may explain this omission.  In *Hunter I* the court explained:

> In the introduction to his complaint, Hunter alleges that defendants have "breached the contract and violated federal law - Uniform Commercial Code ("UCC") Article 4A, Section 4A-302, Section 4A-401 and Section 4A-402." Texas's version of the UCC is Tex. Bus. & Com. Code Ann. § 1.101 *et seq.* Because in the remainder of the complaint Hunter alleges a

counsel case law coupled with his "allegation that he did not waive his right to counsel provides the functional equivalent of an express allegation of indigency"); *Ruiz v. Mackie Wolfe Zientz & Mann, P.C.*, 2012 WL 12888782, at *6 (W.D. Tex. Dec. 28, 2012) ("[G]iven plaintiffs' *pro se* status, the Court has liberally construed plaintiffs' motion to reconsider as an amended complaint, or its functional equivalent, that is, plaintiffs' explanation of why plaintiffs should be afforded the opportunity to amend.").

Furthermore, the court grants Hunter's request for leave to replead his common-law breach of contract claim.

In view of the consequences of dismissal on the complaint

---

cause of action only for "breach of contract," not for violations of this statute, the court assumes that Hunter is asserting only a common-law breach of contract claim, not a statutory claim under the Texas Business and Commerce Code. If, however, Hunter elects to amend his complaint as permitted under the court's grant of leave to replead, he may assert an additional claim under this statute, assuming he has a basis to do so.

*Hunter I*, 2024 WL 3094610, at *6 n.3 (citations and some quotation marks omitted). From this passage, the potential for Hunter's possible confusion seems apparent. The court was merely explaining that, if Hunter intended in his amended complaint to plead a UCC claim in addition to his common-law breach of contract claim, the UCC claim properly arose under the Texas Business and Commerce Code. Hunter may have misunderstood the court to be suggesting that, if he elected to amend his complaint, he *must* assert his breach of contract claim under Tex. Bus. & Com. Code Ann. § 1.101 *et seq.* Given this background and Hunter's assertion regarding his common-law breach of contract claim in his pleadings, it is reasonable to interpret Hunter's omission of his common-law breach of contract claim from his first amended complaint not as abandoning the claim, but rather as a mistake by a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" (citations and internal quotation marks omitted)).

- 12 -

> alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration omitted) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It is not apparent that the pleading deficiencies in Hunter's complaint are incurable.  NFCU asserts that "[a]s [Hunter] has now tried twice to bring a cognizable lawsuit without success, any further amendment would be futile and dismissal with prejudice is proper."  D. Br. (ECF No. 20) at 16.  To the contrary, Hunter's common-law breach of contract claim survived NFCU's first motion to dismiss.[4]  Hunter has not advised the court that he is unwilling or unable to amend in a manner that will avoid dismissal.  And, in granting leave to replead, the court takes into consideration that Hunter is proceeding *pro se*.  *See, e.g.*, *Smallwood v. Bank of Am.*, 2012 WL 32654, at *5 (N.D. Tex. Jan. 6, 2012) (Fitzwater, C.J.) (granting leave to file third amended complaint because plaintiffs were appearing *pro se*).

Thus although the court is dismissing Hunter's Chapter 3 breach of contract claim, it will grant Hunter leave to replead his common-law breach of contract claim.

---

[4]Although in granting Hunter leave to replead the court has relied in part on the fact that Hunter's common-law breach of contract claim survived NFCU's first motion to dismiss, the court expresses no view on the viability of Hunter's common law claim should he choose to replead it.

IV

The court turns next to Hunter's promissory estoppel claim.

A

"Under Texas law, '[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.'" *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).

But "[p]romissory estoppel is not applicable to a promise covered by a valid contract between the parties[.]" *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex. App. 2002, no pet.); *accord Doctors Hosp. 1997, LP. v. Sambuca Hous., L.P.*, 154 S.W.3d 634, 636-37 (Tex. App. 2004, pet. abated) (collecting cases). "If an alleged promise is part of a valid contract, the promisee cannot disregard the contract and sue for reliance damages under the doctrine of promissory estoppel." *Stable Energy, LP. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App. 2001, no pet.) (citation omitted); *accord Doctors Hosp. 1997*, 154 S.W.3d at 636-37 (collecting cases).

B

As grounds for his promissory estoppel claim, Hunter alleges that NFCU made a clear and definite promise to apply the "proceeds from a security interest to the account ending in 9616," Am. Compl. § IV, ¶ 2.1; that Hunter reasonably relied on this promise, as evidenced by his acceptance of NFCU's various offers, his assignment of rights to the proceeds from the security interest, his provision to NFCU of the necessary documentation, and his

- 14 -

omission to seek alternative financial remedies; and that his reliance was to his substantial detriment in the form of significant financial and emotional harm.

NFCU contends that Hunter's promissory estoppel claim fails as a matter of law because it covers the same subject matter as his breach of contract claim. NFCU also maintains that Hunter has not plausibly pleaded a promissory estoppel claim because the promise that he alleges—that "NFCU's representatives assured the Plaintiff that upon his acceptance and fulfillment of specific conditions, the process would be applied to his account balances," Am. Compl. § IV, ¶ 2.1—is too vague to engender reasonable reliance.

Hunter responds that his claims for breach of contract and promissory estoppel can coexist because the "promises regarding the application of proceeds are additional to the contractual terms." P. Resp. (ECF No. 21) at 7.

C

The court concludes that Hunter has failed to plead a plausible promissory estoppel claim because the promise on which he relies is covered by a valid contract between Hunter and NFCU.[5] Hunter alleges that he reasonably relied to his detriment on NFCU's promise to apply "the proceeds from a security interest to the account ending in 9616." Am. Compl. § IV, ¶ 2.1. Yet he also alleges a valid contract under which NFCU made the same promise.[6]

---

[5]Because the court concludes that Hunter's breach of contract and promissory estoppel claims are mutually exclusive, the court need not reach NFCU's contention that the promise that Hunter alleges is too vague to engender reasonable reliance.

[6]Although Hunter has not plausibly pleaded a Chapter 3 breach of contract claim, his original complaint pleaded a common-law breach of contract claim that survived NFCU's

Because "[p]romissory estoppel is not applicable to a promise covered by a valid contract between the parties," *Richter*, 90 S.W.3d at 899, promissory estoppel does not apply to NFCU's promise concerning the security interest proceeds. Thus Hunter's breach of contract and promissory estoppel claims are mutually exclusive, and NFCU is entitled to dismissal of Hunter's promissory estoppel claim.[7] *See, e.g.*, *Est. of Rashti v. Bank of Am. Nat'l Ass'n*, 782 Fed. Appx. 322, 327 (5th Cir. 2019) (per curiam) (affirming dismissal of promissory estoppel claim where the promise was covered by a valid contract between the parties); *OPF Enters., LLC v. Evanston Ins. Co.*, 2021 WL 4710948, at *6 (S.D. Tex. Oct. 7, 2021) (dismissing promissory estoppel claim where the promise was covered by a valid contract

---

first motion to dismiss. Because the court is granting Hunter leave to amend his complaint based on his indication that he wishes to replead his common law claim, for the purposes of its analysis of Hunter's promissory estoppel claim on this motion to dismiss the court proceeds as if Hunter has repleaded his original complaint's allegations of a valid contract between himself and NFCU. As alleged in Hunter's original complaint, and alluded to in Hunter's first amended complaint, under this contract NFCU promised to apply proceeds from a security interest to Hunter's NFCU account, which is precisely the promise on which Hunter bases his promissory estoppel claim. The court expresses no view on the merits of Hunter's common law claim should he replead.

[7]The court recognizes that Hunter could have pleaded promissory estoppel in the alternative. *See, e.g.*, *S. Cent. Jurisdictional Conf. of United Methodist Church v. S. Methodist Univ.*, 674 S.W.3d 334, 372 (Tex. App. 2023, pet. filed) (citing *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 655 (Tex. App. 2015, no pet.) ("Generally, promissory estoppel is a viable alternative to breach of contract."); *see also DeNucci v. Moretti*, 1999 WL 250141, at *8 (Tex. App. Apr. 29, 1999) (mem. op.) (allowing allegation of inconsistent claims of promissory estoppel and breach of contract), *dism'd after settlement*, 1999 WL 603589 (Tex. App. Aug. 12, 1999, no pet.). But because Hunter's first amended complaint instead pleads a promissory estoppel claim in addition to a breach of contract claim, he has not availed himself of the safe harbor from the rule against mutually exclusive breach of contract and promissory estoppel claims.

between the parties); *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, 2017 WL 1231026, at *3 (S.D. Tex. Apr. 4, 2017) (Rosenthal, C.J.) (same).

## V

The court now addresses Hunter's consumer fraud claim, which he brings under the DTPA.

## A

The DTPA provides consumers with a cause of action for false, misleading, or deceptive acts or practices.  *See* Tex. Bus. & Com. Code Ann. § 17.50(a) (West 2024); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

> The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury.

*Windle v. Synthes USA Prods., LLC*, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012) (Fitzwater, C.J.) (citing *Amstadt*, 919 S.W.2d at 649).  "The question of whether a party is a consumer [under the DTPA] is a question of law." *Gomez v. Wells Fargo Bank,* 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010) (Boyle, J.) (citation omitted).  The DTPA defines a consumer as:

> an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation

- 17 -

or entity with assets of $25 million or more.

Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2024).  The DTPA defines "goods" as "tangible chattels or real property purchased or leased for use."  *Id.* § 17.45(1).  It defines "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."  *Id.* § 17.45(2).  It is clear that money is neither a "good" nor a "service" under the DTPA.  *See, e.g., Davis v. Wells Fargo Bank, N.A.*, 976 F.Supp.2d 870, 886 (S.D. Tex. 2013) (noting, in context of DTPA claim, that "money is neither a good nor a service"); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980) (holding that money is not a "good," as defined by the DTPA but, rather "money is properly characterized as a currency of exchange that enables the holder to acquire goods").

B

As grounds for his DTPA consumer fraud claim, Hunter alleges that "NFCU engaged in deceptive practices by failing to disclose material terms of the account agreements, constituting consumer fraud under the [DTPA]," Am. Compl. § IV, ¶ 3.1; that "NFCU misrepresented the terms and conditions, amounting to fraudulent inducement under the [DTPA]," *id.* § IV, ¶ 3.2; that NFCU's "conduct violates the DTPA's prohibition against false, misleading, or deceptive acts or practices, and unconscionable actions," *id.* § IV, ¶ 3.3; and that as a result of NFCU's deceptive practices, Hunter has "suffered financial losses and emotional distress," *id.* § IV, ¶ 3.4.

NFCU contends that Hunter has failed to plausibly plead a DTPA claim because he

- 18 -

cannot establish that he has consumer status.  NFCU maintains that Hunter is not a consumer with respect to his credit card agreement with NFCU because under Texas law the lending of money is not a good or a service.  NFCU also posits that Hunter's fraud claim must fail because he fails to satisfy the heightened pleading requirements of Rule 9(b).

Hunter responds that, under Texas law, he is a DTPA consumer because he "sought and acquired financial services from NFCU."  P. Resp. (ECF No. 21) at 5.  Hunter also maintains that the allegations in his first amended complaint "meet the heightened pleading requirements of Rule 9(b) for claims of fraud, specifying the who, what, when, where, and how of the alleged fraud, [and] providing sufficient detail for NFCU to prepare a defense." *Id.* at 5.

## C

The court concludes that Hunter has failed to plausibly allege that he has standing to sue under the DTPA.[8]

Read liberally,[9] Hunter's first amended complaint alleges three facts that are relevant to his contention that he qualifies as a consumer under the DTPA: (1) he acquired a line of credit from NFCU; (2) in connection with this line of credit, NFCU promised to apply the

---

[8]Because the court concludes that Hunter's DTPA claim fails on standing grounds, the court need not reach NFCU's contention that this claim does not satisfy the heightened pleading requirements of Rule 9(b).

[9]The parties' recitations of the facts are relatively opaque.  But as far as the court can determine, this case is principally about a secured credit card that Hunter obtained from NFCU under which NFCU promised to apply the proceeds from a collateral account to Hunter's credit account if and when Hunter defaulted on his credit card payments.

proceeds from a collateral account to Hunter's credit account if and when Hunter defaulted on his credit card payments; and (3) NFCU engaged in deceptive practices in connection with Hunter's NFCU accounts, thus constituting consumer fraud under the DTPA.  The court cannot reasonably infer from these alleged facts that Hunter is a consumer under the DTPA.

Hunter's mere acquisition of a line of credit from NFCU does not suffice to confer consumer status.  A person who acquires a line of credit without more does not seek or acquire goods or services within the meaning of the DTPA.  *See, e.g.*, *Luker v. G.C. Servs., LP*, 2011 WL 13334307, at *7 (S.D. Tex. Mar. 23, 2011) (concluding that plaintiff, in acquiring a line of credit, was not a consumer under the DTPA); *Cushman v. GC Servs., LP*, 657 F.Supp.2d 834, 843-44 (S.D. Tex. 2009) (concluding that plaintiff, in acquiring a line of credit from American Express, did not seek goods or services under the DTPA); *Riverside Nat'l Bank*, 603 S.W.2d at 174-75 (holding that loan applicant, in arranging for a loan, "did not seek either 'goods or services' as defined under the DTPA"); *compare Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706-07 (Tex. 1983) (holding that borrower seeking financing for a house qualified as a "consumer" under the DTPA) *and Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 388-89 (Tex. 1982) (concluding that bank customer seeking financing for a dump truck was a "consumer" under the DTPA) *with Luker*, 2011 WL 13334307, at *7 (concluding that plaintiff, in acquiring a line of credit, was not a consumer under the DTPA where she did not apply "for her credit card to make any specific purchase; she had no large purchase plan when she obtained the line of credit; and the card was used for general purposes").

Moreover, although Hunter is correct that one who acquires financial services can qualify as a consumer under the DTPA, the court can locate no authority, and Hunter does not cite to any, that suggests that applying the proceeds from a collateral account to a secured credit account constitutes a "financial service" in the context of the DTPA. *See, e.g.*, *Cobb v. Miller*, 2013 WL 12142342, at \*4 (S.D. Tex. Aug. 7, 2013) (concluding that plaintiff plausibly alleged consumer status under the DTPA by alleging that he acquired financial services in the form of financial and investment advice); *Herndon v. First Nat'l Bank*, 802 S.W.2d 396, 399 (Tex. App. 1991, writ denied) (concluding that financial advice on when and where to obtain financing, whether to abstain from borrowing, and how to structure various financial agreements of business operations constituted financial services for purposes of the DTPA); *First Fed. Savs. & Loan Ass'n v. Ritenour*, 704 S.W.2d 895, 898-900 (Tex. App. 1986, writ ref'd n.r.e.) (holding that purchaser of a certificate of deposit was a consumer covered by the DTPA, in view of the full range of financial services that the defendant offered its customers in relation to their deposits, including the right to place a "hold" order on an account which was later dishonored and formed the basis of that suit).

And even if NFCU's applying the proceeds of the collateral account to Hunter's credit account could constitute a financial service under the DTPA, because this "financial service" is incidental to, but not an objective of, NFCU's service of supplying Hunter with a line of credit, it would still be insufficient to confer consumer status under the DTPA. *See First State Bank v. Keilman*, 851 S.W.2d 914, 929 (Tex. App. 1993, writ denied) (citing *FDIC v. Munn*, 804 F.2d 860, 863-64 (5th Cir. 1986)) ("The key principle in determining consumer

- 21 -

status is that the goods or services purchased must be an objective of the transaction, not merely incidental to it." (emphasis omitted)); *see also James v. Wells Fargo Bank, N.A.*, 2012 WL 12878197, at *3 (N.D. Tex. July 18, 2012) (Cummings, J.) (citation omitted) ("[E]ven if a lender provides services that are incidental to the completed mortgage loan, the performance of such services does not transform the borrower into a 'consumer' for purposes of the DTPA."), *aff'd*, 533 Fed. Appx. 444 (5th Cir. 2013); *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 614-15 (Tex. App. 2000, pet. denied) (concluding that construction lender's financial services provided to a contractor to assist the homeowners to obtain a loan were incidental to the loan and not an independent objective, and, thus, the contractor was not a "consumer" within the meaning of the DTPA).

Because Hunter has not plausibly alleged that he acquired from NFCU anything more than an extension of credit and incidental services, the court cannot reasonably infer that Hunter is a consumer with standing to sue under the DTPA. Accordingly, NFCU is entitled to dismissal of Hunter's DTPA consumer fraud claim.

## VI

The court turns next to Hunter's remaining claims, all of which arise under various Texas and federal statutes and regulations. Because the court concludes that for all of these claims Hunter's conclusory allegations fall far short of what Rule 12(b)(6) requires, the court addresses them together.

Hunter asserts in conclusory fashion and without alleging any specific facts that NFCU violated the following Texas and federal statutes and regulations: the Texas Business

& Commerce Code §§ 1.201(b)(20), 1.205, 1.304, 2.210, 2.302, 3.302, 3.401, 26.01(a), and

26.02(b); the Texas Finance Code § 341.102; § 10(b) of the Securities Exchange Act of 1934,

15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R.

§ 240.10b-5, promulgated thereunder; the Uniform Commercial Code Art. 4A; the Bank

Secrecy Act of 1970, 31 U.S.C. § 5311 *et seq.*, and 31 C.F.R. § 1020.220, promulgated

thereunder; the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; the Uniform Fiduciaries

Act, 45 Stat. 509; and the Federal Reserve Act, 12 U.S.C. § 221 *et seq.*, and 12 C.F.R

§ 215.11, promulgated thereunder.  "In order to avoid dismissal for failure to state a claim

. . . a plaintiff must plead specific facts, not mere conclusory allegations." *Collins v. Morgan

Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) (citation omitted).  "[C]onclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to

prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284

(5th Cir.1993) (citation omitted).  Hunter's allegations in relation to these claims consist of

a bulleted list, with each bullet stating the relevant law and offering one or two sentences

alleging that NFCU acted contrary to what the law requires.  Hunter's at-best "[t]hreadbare

recitals of the elements of [these] cause[s] of action, supported by mere conclusory

statements, do not suffice."[10]  *Iqbal*, 556 U.S. at 678.  Thus NFCU is entitled to dismissal of

---

[10]The court doubts that all of the laws under which Hunter sues create private rights of action.  For example, Hunter asserts a claim under § 29 of the Federal Reserve Act, which courts have held does not create a private right of action.  *See Mims v. Bank of Am.*, 2023 WL 8804324, at *1 (E.D. Tex. Dec. 20, 2023) (collecting cases).  The court also notes that some of Hunter's claims, such as his securities fraud claim, carry a heightened pleading standard. *Hunter I*, 2024 WL 3094610 at *5 (quoting *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d

these claims.  *See, e.g.*, *Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023) (affirming dismissal where plaintiff's allegations were pleaded "in a conclusory fashion without meaningful factual content"); *Moore v. Potter*, 275 Fed. Appx. 405, 409-10 (5th Cir. 2008) (per curiam) (same); *Taylor v. El Centro Coll.*, 2022 WL 102611, at *10-11 (N.D. Tex. Jan. 10, 2022) (Fitzwater, J.) (dismissing claim where *pro se* plaintiff pleaded only conclusory assertions).

\*   \*   \*

For the reasons explained, the court grants NFCU's motion to dismiss and also grants Hunter leave to file a second amended complaint to replead his common-law breach of contract claim.  He must file the second amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

September 19, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

676, 679 (5th Cir. 2014)) ("Because Hunter brings a private lawsuit for securities fraud under the Exchange Act and Rule 10b-5, he must comply with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and 'conform the allegations in [his] complaint to the heightened pleading requirements set forth at 15 U.S.C. § 78u-4.'").